UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE M. E.,[1],<br><br>   Plaintiff,<br><br> v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>   Defendant. | Case No. 5:20-cv-01199-AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

  Plaintiff filed this action seeking review of the Commissioner's final decision denying her application for disability insurance benefits. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

### BACKGROUND

  On October 23, 2017, Plaintiff filed an application for disability insurance benefits alleging disability beginning March 10, 2016. The application was denied

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

initially and on reconsideration. (Administrative Record ("AR") 60-72, 74-86.) On December 12, 2019, Plaintiff appeared with counsel at a hearing conducted before an Administrative Law Judge ("ALJ"). At the hearing, Plaintiff and a vocational expert ("VE") testified. (AR 35-59.)

On January 3, 2020, the ALJ issued a decision finding that Plaintiff suffered from the following medically severe impairments: obesity, fibromyalgia, anxiety disorder, and depressive disorder. (AR 18.) The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with the following limitations: she can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she can never climb ropes, ladders, and scaffolds; she can have no exposure to unprotected heights or hazardous moving machine parts; she can perform simple, routine tasks, but not at production rate pace as with an assembly line; she can make simple, work-related decisions; and she can tolerate occasional changes in the workplace environment. (AR 24.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff was able to perform jobs existing in significant numbers in the national economy, including the jobs of kitchen helper, counter supply worker, and hand packager. (AR 29-30.) Accordingly, the ALJ determined that Plaintiff was not disabled from March 10, 2016 through the date of his decision. (AR 30-31.) The Appeals Council denied review (AR 7-12), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUE

Whether the ALJ provided legally sufficient reasons for rejecting the opinion of consultative examiner, Rashin D'Angelo, Ph.D.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial

evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Dr. D'Angelo. Specifically, Plaintiff points to Dr. D'Angelo's opinions that due to Plaintiff's mental impairment, she is moderately limited in her ability to complete a normal workday or work week and has moderate difficulties in handling the usual stresses, changes and demands of gainful employment. According to Plaintiff, the ALJ implicitly rejected these opinions because he failed to explicitly incorporate them into the RFC. (ECF No. 17 at 7-15.) The Commissioner argues that the ALJ properly evaluated Dr. D'Angelo's opinion under the new regulations, which do not attribute special weight to the opinion of a treating source. Further, the Commissioner argues that the ALJ's RFC assessment properly accounts for Dr. D'Angelo's opinions. (ECF No. 18 at 7-20.)

### A. The ALJ's Decision

In summarizing the mental health evidence, the ALJ began by noting that Plaintiff complained of stress in February 2015, before the alleged onset date. (AR 27, citing AR 311, 319.) In February 2016, Plaintiff's primary care physician referred

Plaintiff for stress management. She was referred to stress management again in May 2016, although at that time she reported that her stress had improved since quitting her job. (AR 325, 328.) As the ALJ noted, it does not appear that Plaintiff followed up with the referral.

In August 2016, Plaintiff was prescribed antidepressant and antianxiety medication. (AR 393, 395-396.) In March 2017, the dosage was increased. (AR 373, 375-376.) In April 2018, Plaintiff requested a referral to a psychologist and psychiatrist. (AR 425.) The ALJ again noted that it does not appear that Plaintiff pursued treatment with a psychologist or psychiatrist. (AR 27.)

Treatment notes from August 2018 reflect that Plaintiff's anxiety was stable. (AR 505.) The ALJ observed that other than one notation indicating Plaintiff was tearful when discussing the reasons for quitting her job, the record contains few positive clinical findings related to her mental impairments. In addition, the ALJ pointed out the absence of evidence suggesting that Plaintiff required frequent emergency room treatment or psychiatric hospitalization for her mental impairments.

The ALJ discussed in detail Dr. D'Angelo's consultative psychological examination of Plaintiff. (AR 27-28, citing AR 420-424.) Dr. D'Angelo's report indicates that Plaintiff complained of depression, post-traumatic stress disorder, anxiety, concentration problems, forgetfulness, difficulty sleeping, and panic attacks. (AR 420.) A mental status examination revealed that Plaintiff appeared withdrawn, but she was cooperative and maintained fair eye contact. Her speech was normal. Plaintiff's affect was flat. Plaintiff described her mood as depressed, tearful and anxious. Plaintiff's thought processes were linear and goal directed, but with excessive ruminations. Plaintiff was able to register 3 out of 3 items at 0 minutes and 1 out of 3 at 5 minutes. Her abstract thinking, fund of knowledge, insight and judgment were intact. (AR 422-423.)

Dr. D'Angelo diagnosed Plaintiff with adjustment disorder with anxiety and depressed mood. (AR 423.) In Dr. D'Angelo's opinion, Plaintiff has no limitations

performing simple or repetitive tasks; mild limitations performing detailed and complex tasks; mild difficulties maintaining social function; mild difficulties accepting instructions from supervisors and interacting with coworkers and the public; mild difficulties in performing work activities on a consistent basis without special or additional supervision; moderate difficulties focusing and maintaining attention; moderate difficulties in concentration, persistence and pace; moderate limitations completing a normal workday or work week due to her mental condition; and moderate difficulties handling the usual stresses, changes and demands of gainful employment. (AR 423-424.)

The ALJ found Dr. D'Angelo's opinion to be persuasive. As the ALJ explained, Dr. D'Angelo's opinion was supported by the objective findings from her examination and was generally consistent with the evidence in the record which showed some treatment for mental impairments but generally normal examinations. (AR 28.)

The ALJ concluded that the medical record supported no more than moderate limitations in functioning, which were adequately accommodated in the RFC limiting Plaintiff to simple, routine tasks, not at product rate pace; work involving simple work-related decisions; and only occasional changes in the workplace environment. (AR 24, 28.)

**B. Relevant Law**

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ is responsible for translating a claimant's condition and limitations into an RFC that "adequately captures restrictions" to the claimant's ability to work). The RFC – and any resulting hypothetical presented to a vocational expert – "must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (citation omitted, emphasis in original).

An ALJ who accords substantial or great weight to a physician's opinion must either incorporate the findings into the RFC or explain why the ALJ chose not to accept them. *See, e.g., Martin v. Comm'r of Soc. Sec. Admin.*, 472 F. App'x 580 (9th Cir. 2012).[2]

**C. Analysis**

Plaintiff's claim is based upon the premise that the ALJ rejected Dr. D'Angelo's opinions that she has moderate limitations completing a normal workday or work week and moderate limitations in handling the usual stresses, changes and demands of gainful employment. This premise is faulty.

The SSA defines a "moderate" limitation to mean "[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily." *See Fergerson v. Berryhill*, 2017 WL 5054690, at *3 (C.D. Cal. Nov. 1, 2017) (quoting Office of Disability Adjudication and Review, Social Security Administration, Form HA-1152-U3, Medical Source Statement of Ability to Do Work-Related Activities (Mental)); *Cantu v. Colvin*, 2015 WL 1062101, at *2–3 (N.D. Cal. Mar. 10, 2015) (citing Form HA-1152-U3 as providing the definition of a "moderate" limitation). While Dr. D'Angelo opined that Plaintiff had moderate limitations in these two areas, she did not quantify her opinion. That is, Dr. D'Angelo did not indicate that Plaintiff would be late or miss work any specific number of days a month. Nor did Dr. D'Angelo indicate that Plaintiff was precluded from a specific quantity or kind

---

[2] The bulk of the parties' briefs consist of arguments about the effect of new regulations which provide that the Commissioner "will not defer or give any specific evidentiary weight ... to any medical opinion(s) ... including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The Commissioner contends that these regulations supersede Ninth Circuit authority, such that an ALJ is no longer required to provide specific and legitimate reasons for rejecting a treating source's opinion. (ECF No. 18 at 12-18.) Plaintiff argues that the specific and legitimate standard remains controlling law. (ECF No. 19 at 3-4.) The Ninth Circuit has not yet addressed whether or how the new regulations alter analysis of the adequacy of an ALJ's reasoning. *See Allen T. v. Saul*, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020). Because the Court concludes that the ALJ did not reject Dr. D'Angelo's opinions but rather incorporated them into Plaintiff's RFC, there is no need to address the effect of the regulations.

of workplace stress or change. (*See* AR 420-424.) Because Dr. D'Angelo, who is an agency consultative examiner, did not provide a more particularized definition for "moderate" limitations, she presumably used that word consistently with the Social Security Administration's ("SSA") definition. *See Fergerson*, 2017 WL 5054690, at *3 ("Dr. Ijeaku's report did not provide a customized definition for a 'moderate' limitation, so, as an agency consultative examiner, she presumably used that word consistent with the Social Security Administration's definition."); *Turner v. Colvin*, 2015 WL 5708476, at *3 (C.D. Cal. Sep. 29, 2015) (in absence of custom definition, court presumed that physician used term in accordance with relevant form definition meaning "moderate limitation … in this area but the individual is still able to function satisfactorily"), *aff'd*, 693 F. App'x 722 (9th Cir. 2017). Consequently, the ALJ could reasonably have understood Dr. D'Angelo's opinion as meaning that notwithstanding some limitations, Plaintiff "can still function satisfactorily" in workplace attendance and in handling the stresses, changes and demands of gainful employment. *See Arriola v. Astrue*, 2008 WL 4926961, at *4 (C.D. Cal. Nov. 14, 2008) (the accepted meaning of the term "moderate" defines term as "more than a slight limitation in this area but the individual is still able to function satisfactorily").

      The ALJ's RFC imposed significant limitations based upon Plaintiff's mental impairments. Specifically, the RFC restricts Plaintiff to simple, routine tasks, with no work at production rate pace. It also restricts Plaintiff to making simple, work-related decisions. In addition, the RFC limits Plaintiff to only occasional changes in the workplace environment. There is no evidence in the record to suggest that Dr. D'Angelo or any other treating, consulting, or reviewing source considered Plaintiff to be wholly unable to complete a workday or work week, particularly if she was limited to performing simple and routine tasks at a non-production rate pace, simple, work-related decisions, and only occasional changes in the workplace environment. *See Stubbs-Danielson*, 539 F.3d at 1173-1174 (noting that the ALJ's limitation to simple work sufficiently accommodated the examining and reviewing

physicians' findings that the claimant had "several moderate limitations in other mental areas"). On this record, the Court concludes that the ALJ's RFC restrictions fairly accommodated Dr. D'Angelo's opinions. *See, e.g., Jacque M. v. Saul*, 2019 WL 6893965, at *8 (C.D. Cal. Dec. 18, 2019) (ALJ's RFC effectively translated physician opinion that plaintiff had "moderate limitations in completing a normal workday or work week due to mental conditions, and handling the usual stresses, changes, and demands of gainful employment," by limiting plaintiff to simple and repetitive tasks, no contact with the public, and limited contact with supervisors and co-workers); *Fergerson*, 2017 WL 5054690, at *3–4 (RFC limiting plaintiff to non-public, unskilled or semiskilled work fairly accommodated physician's opinion that plaintiff had moderate limitations in meeting schedules or maintaining attendance); *Amloian v. Colvin*, 2016 WL 7223260, at *6 (C.D. Cal. Dec. 13, 2016) ("the ALJ's RFC assessment limiting Plaintiff to 'simple, routine tasks, which are object oriented in a habituated setting' accommodated his moderate limitations in performing work activities without special or additional supervision, completing a work week, and managing stress."); *Lewis v. Colvin*, 2015 WL 4164682, at *5 (C.D. Cal. July 9, 2015) (finding that ALJ did not err in translating "moderate limitations in performing work activities on a consistent basis without special or additional supervision, completing a normal work day or work week, and concentration, persistence and pace" into restriction to "simple, routine, repetitive tasks"). Because the RFC fairly incorporates Dr. D'Angelo's opinions, the ALJ was not required to give specific and legitimate reasons for "rejecting" them. *Fergerson*, 2017 WL 5054690, at *3–4 (ALJ was not required to give specific and legitimate reasons for "supposedly" rejecting physician opinion of a "moderate" attendance impairment, because the ALJ did not in fact reject that finding).

///

///

///

**ORDER**

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: 4/26/2021

*/s/ Alex MacKinnon*

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE